## MINNIE ALLEN v. STATE.

No. A-2702. Opinion Filed June 14, 1917.

(165 Pac. 745.)

1. **TRIAL—Reception of Verdict—Delegation—Statute—Consent to Discharge of Jury.** Where, during the trial of a homicide case, the jury having retired to deliberate on their verdict, the judge was incapacitated from further proceeding with the trial on account of sickness, and by agreement of the parties he designated an attorney of the court to receive the verdict of the jury;

**Held,** that the reception of the verdict in a criminal case is a judicial act, which cannot be delegated, and a verdict so received is a nullity, and that no judgment of conviction could be lawfully pronounced upon such verdict.

**Held,** further, that the discharge of the jury under such circumstances must be deemed to have been with the consent of the defendant.

2. **SAME—Illness of Judge Preventing Return of Verdict—Retrial.** Where a jury impaneled and sworn in a criminal case is prevented from returning a verdict by reason of illness of the presiding judge, incapacitating him from attending to the duties of the trial, the case may be again tried.

3. **SAME—Former Jeopardy—Acquittal—Illegal Verdict—New Trial —Constitutional Provisions.** A judgment of conviction based on an illegal verdict will not operate as an acquittal, either before or after reversal on appeal, and a new trial in such a case after reversal of such judgment, on defendant's appeal, is no infringement of the clause of the Constitution which declares that "Nor shall any person be twice put in jeopardy of life or liberty for the same offense." Const. art. 2, sec. 21.

*Appeal from District Court, Payne County;*
*A. H. Huston, Judge.*

Minnie Allen was convicted of manslaughter in the first degree, and she appeals. Reversed.

*J. M. Springer* and *Robert A. Lowry,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error, Minnie Allen, was tried in the district court of Payne county upon an information jointly charging her and George W. Carpenter with the murder of one Tom Oglesby, alleged to have been committed in the said county on the 18th day of May, 1915.   Upon her separate trial she was found guilty of manslaughter in the first degree, and her punishment fixed at eight years' imprisonment in the penitentiary. From the judgment rendered in pursuance of the verdict she appeals.

It appears from the record that on the 15th day of October, 1915, the cause was submitted to the jury, and they retired in charge of a bailiff to consider of their verdict, and the court thereupon recessed; that Judge Huston, presiding judge, became seriously ill that evening, and, in view of such illness, it was agreed between the county attorney of Payne county and the attorneys for plaintiff in error that, in the event it became necessary for Judge Huston to return to his home in Guthrie before the jury had returned a verdict, Robert A. Lowry, an attorney at the bar of Payne county, should act as special judge for the purpose of receiving the verdict of the jury; that Judge Huston left Stillwater on the morning of the 16th day of October before said jury had returned their verdict; that about an hour later the jury came into the court room in charge of their bailiff, and in accordance with the aforesaid agreement, Robert A. Lowry convened court and inquired of the jury if they had agreed upon a verdict.   The jury answered they had.   Robert A. Lowry received their verdict and delivered the same to the court clerk.   After the verdict was read and the jury polled, Robert A. Lowry ordered the clerk to record the same and have the record

show that all proceedings had and done by Robert A. Lowry in said case were in effect had and done by the district judge, present in his own proper person. On October 19th Judge Huston, returning to Stillwater, opened court, and overruled plaintiff's motion to require the court clerk to correct the record in the case to show the facts. See *Allen v. Huston, Judge, ante,* p. 522, 165 Pac. 742. On the same day motions for new trial and in arrest of judgment were overruled, and in pursuance of said verdict the judgment appealed from was rendered.

It is contended by the plaintiff in error that upon the record the trial court lost jurisdiction during the trial by reason of the fact that the trial judge absented himself from the place where court was being held while the jury was deliberating upon their verdict, and that the plaintiff in error waived none of her rights by reason of said agreement, and that she was entitled to be discharged upon her motion in arrest of judgment. The Attorney General has filed a confession of error and motion to remand the cause that it may be again tried.

Every person charged with crime is entitled to a fair trial in conformity to the laws of the state, and it is a duty resting upon the courts to see that this guaranty conferred by the laws upon every citizen is upheld and sustained. In many cases this court has held that it is the duty of the presiding judge at criminal trials to be present during each and every stage of the proceedings before him, and when the record affirmatively discloses that he lost control of the proceedings by reason of his absence from the bench during the progress of the trial, a judgment of conviction will be reversed. *Stiles v. State,* 9 Okla. Cr. 596, 132 Pac. 822; *Wright v. State,* 7 Okla.

Cr. 280, 123 Pac. 434; *Cochran v. State,* 4 Okla. Cr. 380, 111 Pac. 974. It is a fundamental principle of law that judicial power cannot be delegated, and a verdict of conviction, to be of any validity, must be delivered in open court.

Under the following provisions of our Procedure Criminal the presence of the presiding judge during the entire course of the trial is essential, and the receiving of the verdict is a judicial act, which cannot be delegated:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agrée without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court." (Section 5906, Rev. Laws 1910.)

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called." (Section 5913.)

"If, after the retirement of the jury, one of them becomes so sick as to prevent the continuance of his duty, or any other accident or cause occur to prevent their being kept together for deliberation, the jury may be discharged." (Section 5914.)

"Except as provided in the last section, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered

it in open court, unless by the consent of both parties entered upon the minutes, or unless at the expiration of such time as the court deems proper, it satisfactorily appear that there is no reasonable probability that the jury can agree." (Section 5915.)

"In all cases where a jury are discharged or prevented from giving a verdict, by reason of an accident or other cause, except where the defendant is discharged from the indictment or information, during the progress of the trial, or after the cause is submitted to them, the cause may be again tried at the same or another term, as the court may direct." (Section 5916.)

"While the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for any purpose connected with the cause submitted to them until verdict is rendered or the jury discharged." (Section 5917.)

"When there is a verdict of conviction in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion, and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered," and "if the jury render a verdict not in form, the court may, with proper instructions as to the law, direct them to reconsider it." (Sections 5925 and 5926.)

"When a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in tne negative, the jury must be sent out for further deliberation." (Section 5928.)

Under these provisions, after the retirement of the jury to deliberate and until a verdict is rendered, or the jury discharged in due course of the law, it is the duty of the presiding judge to be where he can respond to any call for the exercise of his judicial authority, and thus give

protection and security to all parties interested or concerned in the result of the trial, and such judge cannot delegate these judicial functions to another, even with the consent of the parties. It is well settled that in prosecutions for felonies the continuous presence of the judge during the entire course of the trial is indispensable, and that whether objection be or be not made, a conviction will be reversed in the case of his improper absence.

In *Meredith v. People,* 84 Ill. 479 (2 American Crim. Rep. 448), which was an indictment for murder, it was held:

"The trial judge must occupy the bench throughout the entire trial, which includes the argument of counsel. Where it is made to appear that, for two days during the argument, the judge was not in the courtroom, but in another part of the building, engaged in other business, and that members of the bar presided in his place, the verdict will be set aside, although this was done by consent of the respondent's counsel, or even by his own consent. The accused cannot waive the presence of the judge during his trial."

In *Ellerbe v. State,* 75 Miss. 522, 22 South. 950, 41 L. R. A. 569, it was held:

"One prosecuted for crime is entitled to have a legally constituted court at every stage of his trial, and where the presiding judge calls a member of the bar to the bench, and, by consent of counsel, leaves the courthouse for some minutes during the concluding argument for the state, the judgment of conviction will be reversed on appeal of the accused, notwithstanding the waiver of objection by his counsel."

In *Durden v. People,* 192 Ill. 493, 61 N. E. 317, 55 L. R. A. 240, where it appeared that one circuit judge heard the evidence and a part of the argument of counsel, and then vacated the bench as presiding judge and left

the county and thereafter took no part in the trial of the cause, nor in any of the other proceedings therein, until the hearing of the motion for a new trial, which he over-ruled, the judgment, for this reason, was reversed. The court used the following language:

"In our view, it makes no difference that another circuit judge of equal power and jurisdiction was presiding in place of the absent judge, if he had no such knowledge of the testimony, already given upon the witness stand, and of the proceedings, already taken in the cause, as to be able to direct and control the arguments of counsel when they pass beyond proper limits, and to determine whether or not the instructions to be given to the jury are based upon the evidence already heard in the presence of the jury. * * * In the case at bar, there was no death, nor sickness, which justified the judge who conducted the trial in vacating the bench. It does not appear for what reason he abandoned the trial of the cause and turned it over to another judge. But, even if he went into another county in order to attend to other business upon his circuit, as is alleged by the Attorney General, there was no official business which more properly demanded his attention than the trial in hand, which involved the life of a human being. * * * Hence, when he was absent from the bench, the authorities, which hold that absence from the bench is error such as justifies a reversal, are strictly applicable to his conduct. His absence was not excused by the fact that another judge, not familiar with the evidence, instructed the jury and received the verdict. The injury, which may have inured to the interests of the plaintiff in error, was not counterbalanced by the presence of a new and outside presiding officer."

In *People v. McPherson*, 74 Hun, 336, 26 N. Y. Supp. 236, it was held that a criminal case cannot be partly tried before one magistrate and partly before another, and it was there said:

"The proposition that a criminal case cannot be partly tried before one magistrate and partly before another seems to me too clear to need argument or citation of. authority to sustain it. When the trial of a case has once commenced it must proceed 'to the end before the same court and jury."

See, also, *O'Brien v. People,* 17 Colo. 563, 31 Pac. 230; *Hayes v. State,* 58 Ga. 35; *McClure v. State,* 77 Ind. 287; *State v. Carnagy,* 106 Iowa, 487, 46 N. W. 805.

In *Ex parte Patswald,* 5 Okla. 789, 50 Pac. 139, speaking thorugh Mr. Justice Tarsney, the court said:

"The one question to be determined is: Did the absence of the presiding judge discharge the jury from the consideration of the cause and, by operation of law, terminate the trial of the cause so as to render void the further proceedings had therein? By law, the terms of the district court of Oklahoma county are fixed to be held at Oklahoma City, and cannot be held at any other place. No person can be lawfully deprived of his liberty except 'by due process of law.' Due process of law would, in this case, imply upon conviction by a court of competent jurisdiction. A court of competent jurisdiction for the trial of the crime of perjury consists of a presiding judge and a jury. It is not a court unless there be both judge and jury. It is the very existence and vitality of the court which authorizes the jury to deliberate. It is the existence and authority of the court which keeps them together, and that existence and authority must continue from the time they are impaneled until they are discharged. *Barrett v. State,* 1 Wis. 156 [175]. For all general purposes the court is considered as in session from the commencement to the close of its term. The jurors, officers and parties are all under its direction. The functions of the court cannot be suspended and the functions of the jury continue. To hold the contrary would be to throw off all those salutary restraints which have been found necessary to the due and solemn administration of justice. The

jury are under the control and protection of the court.
* * * The jury may, while deliberating, properly re-
quire of the court additional instructions as to the law
of the case, or require of the court explanation of the
meaning of the instructions given. They may, in the pres-
ence of the court and by permission of the court, have
their memories refreshed as to the testimony in the case.
All these privileges and safeguards are in great measure
for the protection of the rights of the defendant, and
nothing but the existence and presence of the court during
every part of the proceedings of his trial can insure them
to him. * * * The presence, actual or constructive,
of a judge at every stage of the proceedings in a court
is necessary, or the proceedings will be *coram non judice;*
the law requires his presence during each and every step.
* * * He may take a recess or adjourn as to all other
business from day to day, or for rest or refreshment, but
he cannot suspend the functions of the court as to the
case on which the jury are deliberating. He need not re-
main actually on the bench or in the courtroom, but he
must remain where he may exercise his functions as a
court; that is, at the place where the court is by law
required to be held. He cannot be at another place or
engage in another business which precludes the exercise
of such functions. * * * The court cannot be ad-
journed or its functions suspended as to the cause sub-
mitted to the jury. It is constructively open even though
the judge be resting or refreshing himself; but to be con-
structively open the judge must be at the place where the
law requires it to be kept open. If the judge should die
after a cause was submitted to a jury, we do not think a
verdict could be returned by the jury after a successor
had been appointed and assumed the functions of the court.
The death of the judge would render the jury, as to the
cause, *functus officio;* and absence from the place where,
by law, the court is required to be held, or other cause
which dissolved the organization of the court, or sus-
pended or prevented the exercise of its functions, would
have the same effect as the death of the judge. The ter-

mination of the court by operation of law destroys the power of the jury to exist as a part of the court and discharges the jury. *State v. Jeffors*, 64 Mo. 376. With the termination of the court the jury is discharged by operation of law, and it can then neither make nor return a verdict."

It appears from the record that in the case at bar the jury were without any judicial supervision whatever from the time the presiding judge left the county until they returned their verdict, and then, by consent of the parties, Robert A. Lowry, a practicing attorney of the court, assumed to act as special judge for the purpose of receiving the verdict and discharging the jury. Applying the well-established rules of law enunciated in the cases quoted, we are of the opinion that the verdict of the jury was a nullity, and that no judgment of conviction could be lawfully pronounced on it by the court. It follows that the confession of error is well founded, and should be sustained.

It is now insisted that the plaintiff in error was, by the proceedings of that trial, once in jeopardy, and cannot lawfully be put upon trial the second time. It is a well-settled principle of common and constitutional law that a person cannot be put in jeopardy a second time upon the same charge. Article 2, sec. 21, Constitution of this state, declares:

"Nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life and liberty for the same offense."

It is well established that after the jury has been impaneled and sworn in a criminal case any discharge

thereof without sufficient cause operates as an acquittal, in that it effectually bars another trial for the same offense. But to have this operation and effect such discharge must have been made without the consent, expressed or implied, of the defendant. I Bish. New Crim. Law, sec. 998.

In Cooley's Const. Lim. (7th Ed.) p. 467, the author says:

"A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. And a jury is said to be thus charged when they have been impaneled and sworn. The defendant then becomes entitled to a verdict which shall constitute a bar to a new prosecution; and he cannot be deprived of this bar by a *nolle prosequi* entered by the prosecuting officer against his will, or by a discharge of the jury and continuance of the cause. If, however, the court had no jurisdiction of the cause, or if the indictment was so far defective that no valid judgment could be rendered upon it, or if by any overruling necessity the jury are discharged without a verdict, which might happen from the sickness or death of the judge holding the court, or of a juror, or the inability of the jury to agree upon a verdict after reasonable time for deliberation and effort, or if the term of the court as fixed by law comes to an end before the trial is finished, or the jury are discharged with the consent of the defendant expressed or implied, or if, after verdict against the accused, it has been set aside on his motion for a new trial, or on writ of error, or the judgment thereon been arrested—in any of these cases the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection."

The discharge of the jury under the circumstances of this case must be deemed to have been done upon the

agreement and with the consent of the plaintiff in error. Again, the statute prescribes (section 5916, *supra*) that, in all cases where the jury are discharged, or prevented from giving a verdict by reason of an accident or other cause, after the cause is submitted to them, the cause may be again tried at the same or another term, as the court may direct. The record shows, and counsel for the plaintiff in error concede, that the sickness of the presiding judge was such that it unfitted him for the further performance of his duties in the trial of the case.

The word "accident," as used in this section, is variously defined as an event happening unexpectedly and without fault, or as an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a casualty or mishap. Under the foregoing principles and authorities, the discharge of the defendant on the claim of once in jeopardy should be denied in any aspect of the case contended for by her counsel.

For the reasons stated, the judgment of conviction is reversed, and the case remanded for a new trial. The warden of the penitentiary at McAlester will surrender the plaintiff in error to the sheriff of Payne county, who will hold her in custody until she shall be discharged, or as otherwise ordered according to law.

ARMSTRONG and MATSON, JJ., concur.